
William Cafaro, Esq.
*Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

Amit Kumar, Esq.
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

Andrew S. Buzin, Esq.
*Of Counsel*
ADMITTED IN NY, FL & DC

**LAW OFFICES OF WILLIAM CAFARO**

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

Louis M. Leon, Esq.
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

Matthew S. Blum, Esq.
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

July 21, 2025

***Via* ECF**
Hon. Taryn A. Merkl, U.S.M.J
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    Santana et al v. Seoul Shopping, Inc. et al
                  Case No.: 24-cv-01839

Your Honor:

      We represent Plaintiffs in the above-referenced case brought pursuant to, *inter alia*, Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Defendants Seoul Shopping, Inc. ("Seoul Shopping"), Hansfood I Corp d/b/a H & Y Marketplace ("Hansfood"), and an individual, Taek Sun Han ("Han") (all together as Defendants"). We submit this letter, on behalf of all Parties, consistent with *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request the Court approve the terms of the Parties' settlement agreement,[1] a copy of which is attached hereto as **Exhibit 1.** As explained further below, the Parties respectfully aver that the proposed settlement agreement is fair, and reasonable.

### I. Background and Claims

      On March 12, 2024, the Plaintiffs filed a lawsuit against Defendants alleging FLSA and NYLL violations. According to the Plaintiffs they all worked for Defendants from before the statutory period until on or about the first week of March 2023. As relevant to the causes of action, Plaintiffs claim that throughout the statutory period, Defendants required Plaintiffs to work approximately 55 hours per week, did not pay them for 10 of those hours, and paid them straight time at the minimum wage for 45 of those hours. Plaintiffs have further alleged that they did not receive the applicable wage notice at their time of hire or any time thereafter and that their wage notices did not contain the information required by statute.

      Based on these allegations, each Plaintiff estimates their damages to be $38,160.00 in unpaid overtime, $38,160.00 in liquidated damages, and $10,000.00 in statutory damages. But of course, liquidated damages are never guaranteed in a wage and hour case.

---

[1] Although the case was originally styled as a class/collective action, the Parties decided to settle the claims of the Named Plaintiffs only.

Defendant vehemently denies all of Plaintiffs' allegations and does not admit to any wrongdoing or violation of the law for any period of time. As a threshold matter, Defendants denied that the two (2) corporate Defendants were "joint employers" and therefore Plaintiffs' hours worked at the different locations should not have been totaled to determine overtime hours worked in any given week. Specifically, the entities have different ownership and management that oversee operations at the distinct locations. Furthermore, Plaintiffs did not necessarily work at both locations throughout the entirety of the relevant period and there were significant periods of time that they solely worked at a single location. Additionally, when Plaintiffs worked overtime at either of the distinct locations, they were paid at a time and a half premium. Moreover, Defendants state that, at all times relevant to this lawsuit, they otherwise paid Plaintiffs correctly under the law and kept contemporaneous employment records which squarely dispute Plaintiffs' recollection of weeks worked, hours worked and payment received. Furthermore, Defendants claim that Plaintiffs' alleged work hours are greatly exaggerated.

As stated above, there is a bona fide dispute between the Parties regarding Plaintiffs' claims. The instant settlement constitutes the Parties' good-faith effort to resolve this bona fide dispute in an amicable fashion through arm's-length bargaining between experienced counsel.

## II.  The Settlement Reached Between the Parties

After extensive arms-length negotiations, with the help of accomplished mediator Giulio Zanolla, the Parties were able to arrive at a fair settlement of $122,500.00 which the Parties believe is fair and reasonable under the circumstances. Although there was delay in finalizing the settlement agreement, the Parties engaged in good faith discussions and a fair agreement was ultimately executed. With respect to the release language in the Agreement, Plaintiffs have executed a release of claims related to their wage and hour claims only, and the Agreement contains no confidentiality provision. *See, Barbecho v. M.A. Angeliades, Inc.*, 2017 U.S. Dist. LEXIS 48595, at *6 (S.D.N.Y. Mar. 30, 2017) (rejecting FLSA settlement containing a "general release that r[an] only in favor of defendants"); *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15cv1321, 2015 U.S. Dist. LEXIS 117179, at *2-3 (S.D.N.Y. Aug. 17, 2015) ("[T]he overwhelming majority of courts reject the proposition that FLSA settlements can be confidential.").

Plaintiffs' counsel strongly believes that the $122,500.00 settlement is an optimal result within the circumstances. Defendants firmly believe they would succeed on the merits of the case using witnesses and other relevant evidence. While Plaintiffs (and the undersigned) believe Plaintiffs would have been able to prevail at a higher figure - after unnecessarily running up a higher lodestar - this would have entailed significant risk and would have been irresponsible. As this is our clients' case, his desire to settle this action should govern. Plaintiffs undoubtedly desired to resolve this matter, as did Defendants. Furthermore, each party is represented by experienced counsel with Plaintiffs' counsel's practice focusing almost entirely on employment law.

## III.  The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable."  *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).  Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position

as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, *supra* at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid litigation on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff … against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiffs allege entitlement to damages, Defendants aver that they was properly paid at all times and therefore is not entitled to any damages whatsoever under applicable law.

The settlement represents approximately 47.3% of Plaintiffs' alleged *full* damages in this case, *inclusive of liquidated damages and statutory damages*. In light of the totality of the circumstances, the settlement represents a reasonable compromise of disputed claims in this matter. The settlement eliminates risks and ensures the Plaintiffs will receive a meaningful amount of wages due even after paying the legal fee.

*Risk Faced by the Parties*

Both Parties in this matter face substantial risks in proceeding with this litigation. Defendants are confident that they could prevail at trial on its defenses, including by relying on its timekeeping records, in which case, Plaintiffs could receive no recovery at all. Further, Plaintiffs face the prospect of waiting for the matter to proceed through remaining discovery, motion practice and, eventually, a trial, which could take months or years, and testifying could be emotionally difficult for Plaintiffs. A resolution of this matter now allows Plaintiffs to receive a financial recovery shortly after the Court's approval of the settlement.

Defendants are also mindful that protracted litigation would require significant financial defense costs and, if Plaintiffs prevail at trial (even in the slightest amount), Defendants could face significant liability for Plaintiffs' attorneys' fees and costs. Thus, the costs of litigation clearly weigh in favor of early resolution for all Parties. Accordingly, all Parties face substantial risks in proceeding forward with the litigation.

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in pre-negotiation discovery and participated in arm's length settlement discussions with the help of a mediator in order to arrive at this settlement. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations and after heavily discussing/disputing the merits of the case. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued arbitration. Moreover, because the Plaintiffs left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiffs in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**IV.    Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering this extremely favorable result. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $122,500.00, which equates to $40,833.33, plus out-of-pocket costs and disbursements, which total $1,280.00, consisting of the following:

4

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $ 405.00 | Cost for filing in Court |
| Servico | $ 160.00 | Service on Corp |
| Gotham | $ 65.00 | Service on Ind Defendant |
| Total | $ 630.00 | |

The above are reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). In support of this fee request, the undersigned submits as follows:

Plaintiffs' counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. Louis Leon has expended 28.3 hours in the prosecution of this action while I have expended 4.1 hours on this case. *See*, **Exhibit 2**, Attorney Leon time records; **Exhibit 3**, Attorney Kumar time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

Mr. Leon was employed by this office from July 2017 until July 2025. He received his Juris Doctor degree from Maurice A Deane School of Law at Hofstra University in 2014 and is admitted to practice in the state courts of New York as well as the Southern and Eastern Districts of New York. He is fluent in both English and Spanish, which assisted in this matter as the clients are Spanish speakers. Prior to working at the Law Offices of William Cafaro, he was an associate at Frank & Associates, P.C. and later at Borrelli & Associates, P.L.L.C. where he worked almost exclusively on collective and class action wage and hour litigation.

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[2] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019 and the Northern District of New York in 2023. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in

---

[2] Now called Schwartz Perry & Heller, LLP

employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017-2023, inclusive and rated a Super Lawyer in 2024. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $450.00 per hour.

Given our experience, the Plaintiff is requesting that the Court approve me at a rate of $350.00 per hour for my work on this case and we request a rate of $300.00 per hour for Mr. Leon's work on this matter. This rate is reasonable based on our experience. *See, Rubin v. HSBC Bank USA, NA. Equifax Info. Servs. LLC*, 2025 U.S. Dist. LEXIS 10313, *15-16 (E.D.N.Y Jan 21, 2025) (finding the forum rates in the "Eastern District to now be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals.)

At the requested rates, the total lodestar is **$9,925.00.** Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015). Moreover, a multiplier is used to compensate Plaintiff's counsel for time that is required administering the settlement. *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011). Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher. *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection). Here, the multiplier requested is approximately **4.1** which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed. Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees. This would forestall a resolution that could have been achieved earlier. While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might. Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases. As FLSA

cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

## V. Conclusion

For the reasons set forth above the Parties request that the Court approve the settlement as reflected in the Agreement.  Plaintiffs' counsel further requests that the Court approve the attorneys' fee award reflected in the Agreement as fair and reasonable.

Respectfully submitted,
LAW OFFICES OF WILLIAM CAFARO

_____
By: Amit Kumar, Esq.
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
AKumar@CafaroEsq.com